# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

JANET L. LUCK,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C13-2026

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.     *INTRODUCTION* ........................................... 2

II.   *PRIOR PROCEEDINGS* ................................... 2

III.  *PRINCIPLES OF REVIEW* ................................ 3

IV.  *FACTS* ..................................................... 5
     *A.*   *Luck's Education and Employment Background* ............... 5
     *B.*   *Administrative Hearing Testimony* ...................... 5
         *1.*   *Luck's Testimony* ............................... 5
         *2.*   *Vocational Expert's Testimony* ..................... 8
     *C.*   *Luck's Medical History* ............................... 9

V.   *CONCLUSIONS OF LAW* .................................. 11
     *A.*   *ALJ's Disability Determination* ......................... 11
     *B.*   *Objections Raised By Claimant* ......................... 14
         *1.*   *Substance Use* ................................. 14
         *2.*   *Dr. Chowdhry's Opinions* ......................... 22
     *C.*   *Reversal or Remand* .............................. 27

VI.  *CONCLUSION* ........................................... 28

VII. *ORDER* .................................................... 28

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Janet L. Luck on April 4, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits. Luck asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, Luck requests the Court to remand this matter for further proceedings.

## II. PRIOR PROCEEDINGS

On December 10, 2009, Luck applied for SSI benefits. In her application, Luck alleged an inability to work since July 31, 2007 due to alcoholism, obsessive-compulsive disorder ("OCD"), bipolar disorder, depression, post-traumatic stress disorder ("PTSD"), right hand problems, and seizures. Luck's application was denied on January 26, 2010. On July 9, 2010, her application was denied on reconsideration. On September 21, 2010, Luck requested an administrative hearing before an Administrative Law Judge ("ALJ"). On December 8, 2011, Luck appeared via video conference with her attorney before ALJ Julie K. Bruntz for an administrative hearing. Luck and vocational expert Carma A. Mitchell testified at the hearing. In a decision dated March 5, 2012, the ALJ denied Luck's claim. The ALJ determined that Luck was not disabled and not entitled to SSI benefits because she was functionally capable of performing her past work as a housekeeper or cleaner. Luck appealed the ALJ's decision. On February 4, 2013, the Appeals Council denied Luck's request for review. Consequently, the ALJ's March 5, 2012 decision was adopted as the Commissioner's final decision.

On April 4, 2013, Luck filed this action for judicial review. The Commissioner filed an Answer on July 22, 2013. On August 28, 2013, Luck filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not

disabled and that she is functionally capable of performing her past relevant work as a housekeeper or cleaner.[1] On December 6, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On June 18, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

---

[1] On January 3, 2014, the Court granted the Joint Motion for the Parties to Amend Plaintiff's Brief and the Administrative Record and for Return to Commissioner of Misfiled Documents. *See* docket number 16. Accordingly, Luck's Amended Brief was filed on January 3, 2014. *See* docket number 17.

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there

may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Luck's Education and Employment Background

Luck was born in 1959. She completed the tenth grade in school. Luck stated that she dropped out of school sometime during her eleventh grade year. Later, Luck earned her GED. While in school, Luck participated in special education classes.

The record contains a detailed earnings report for Luck. The report covers the time period from 1981 to 2011. Prior to 2002, Luck had minimal earnings. She earned $60.00 in 1981. From 1982 to 1990, she had no earnings. In 1991, she earned $265.18. She, again, had no earnings in 1992. From 1993 to 1996, Luck earned between $147.00 (1996) and $1,043.91 (1995). She had no earnings from 1997 to 2001. From 2002 to 2007, Luck earned between $4,809.00 (2007) and $13,028.97 (2005). She has no reported earnings since 2008.

### B. Administrative Hearing Testimony

#### 1. Luck's Testimony

At the administrative hearing, Luck's attorney asked Luck why she believed she was disabled and unable to work. Luck responded that in 2006 and 2007 she was "really" depressed and "kind of through [*sic*] in the towel and gave up[.]"[2] Luck elaborated further, stating that she was "[v]ery depressed, extremely depressed, overwhelmed and I didn't feel like I could take it no more. I just kind of blanked out and let things go, and let myself go."[3]

Next, Luck's attorney questioned Luck about her difficulties with alcohol abuse:

---

[2] Administrative Record at 34.

[3] *Id.* at 35.

> Q: And are you a binge drinker? Are you a constant drinker? What is your --
>
> A: I'm a binge drinker. I'll drink. I'll stop. I'll better my life. I'll start, you know, making an effort to do things again; to work, to keep busy, and then I'll go into a depression and I'll go back, and then pretty soon I'm drinking again.
>
> Q: Okay, and then you just keep drinking? Do you drink every day then when you're in the depression?
>
> A: When in a depression there's times that I can drink for days, then I'll get sick; stop. There's many times I put myself in the hospital to stop.

(Administrative Record 36.) At the time of the hearing, Luck testified that except for one incident, where she drank Brandy, she had been sober for three or four months. She attributed her sobriety to participation in an outpatient alcohol recovery program. Luck's attorney asked Luck why she drinks alcohol. Luck answered that she drinks because of depression. Specifically, she stated that:

> I get depressed, and I get really sad, and I don't know why. I can't explain it, and I feel like if I drink it'll take the pain away, but it doesn't. It intensifies it and I end up getting myself in trouble or tearing my health down.

(Administrative Record at 38.) Lastly, Luck explained that during her periods of employment, she generally did not drink alcohol. She stated that not only was she a better worker when she didn't drink, but that she "can't work and drink."[4]

Luck's attorney also inquired about Luck's physical health problems. According to Luck, her only physical problem was nerve damage from a severe cut on her arm and hand. Luck stated that as a result, she has difficulty picking up small objects. She also testified that it would be difficult for her to perform tasks requiring the use of both of her hands.

---

[4] Administrative Record at 39.

Luck's attorney further inquired about Luck's mental health difficulties. Luck stated that she suffers from depression and OCD. Luck's attorney asked Luck how OCD affected her ability to work. Luck replied:

> Because it stands in the way. It takes me longer. It's frustrating because the things that goes through my head, and you know, even at home it takes out a lot of time for me to get ready because everything's got to be so so. I got to check the door knobs. I got to check the stove. I got to lock the door God knows how many times. Make sure I got my key. Lock it, unlock it.

(Administrative Record at 47.) Additionally, Luck indicated that she has difficulty concentrating due to her OCD problems. Luck further testified that she has memory problems. Specifically, she stated that she has difficulty remembering things that happened recently. She also stated that she has difficulty remembering to keep appointments and other similar things in order.

Lastly, Luck testified that at the time of the hearing, she was working a few hours a day, several days a week, doing odd jobs to earn money for living expenses. The ALJ and Luck had the following colloquy regarding her job:

> Q:  . . . How long have you been working?
> A:  Just a couple of months now.
> Q:  And how much do you make?
> A:  $9.00 an hour, but I work about three hours a day to four, depending.
> Q:  Do you work every day?
> A:  No.
> Q:  How many days in a week do you generally work?
> A:  I would say on a regular basis probably about four, maybe five sometimes.

(Administrative Record at 68-69.)

## 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Carma A. Mitchell with a hypothetical for an individual who:

> would need to avoid hazards such as heights and machinery. She would be limited to simple, routine tasks[.] . . . She could have only short, superficial contact with the public, coworkers or supervisors.

(Administrative Record at 65.) The vocational expert testified that under such limitations, Luck could perform her past relevant work as a housekeeper or cleaner. Next, the ALJ asked the vocational expert whether an individual who missed three or more days of work, and would be off task 20% of the time at work could find employment. The vocational expert responded that such an individual could not find competitive full-time employment.

Luck's attorney also questioned the vocational expert:

> Q:    . . . If the person were unable to maintain attention and concentration, and perform within a schedule; if they were unable to do so more than 20% of the work day or work week would that preclude competitive employment?
>
> A:    Yes.
>
> Q:    And I assume that if they were marginally limited that would add no reliability to maintain regular attendance; that would preclude competitive employment?
>
> A:    Yes, it would.
>
> Q:    And would the same be true if they had no ability to -- not able to perform the designated tasks or function on a regular, reliable and a sustained basis in remembering locations and work like procedures; that would preclude competitive employment?
>
> A:    Yes, it would. . . .
>
> Q:    In doing the jobs that you listed in the first hypothetical[.] . . . If I were to say that they were to have no contact with the public, coworkers and supervisors, would that eliminate those jobs?
>
> A:    Yes.

Q:     I assume that if they were unable to complete a normal
       work day or work week; 40 hours a week, eight hours
       a day, . . . that precludes competitive employment?
A:     Yes, it does.

(Administrative Record at 67-68.)

### C. Luck's Medical History

On January 21, 2010, Dr. Aaron Quinn, Ph.D., reviewed Luck's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Luck. On the Psychiatric Review Technique assessment, Dr. Quinn diagnosed Luck with major depression, history of bipolar disorder, and a substance addiction disorder. Dr. Quinn determined that Luck had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Quinn determined that Luck was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Quinn also determined that Luck was markedly limited in her ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length

of rest periods. Dr. Quinn noted that his ratings on the mental RFC were with "alcohol use both present and prominent."[5]

On May 24, 2010, Luck was referred to Dr. Maira M. Obnamia, M.D., for a consultative examination. In reviewing Luck's medical history, Dr. Obnamia noted that in 1985, Luck injured her right arm and hand, severing multiple nerves and requiring several surgeries. Dr. Obnamia further noted that Luck continued to have some residual numbness and lack of fine motor abilities with her right hand. At the time of the examination, Luck's current complaints were right hand numbness, bilateral ankle weakness and pain, and back pain. Dr. Obnamia concluded that:

> [Luck] may have some limitations [in] lifting and carrying [due] to back pain. She can probably limit weight carried [to] about 40-50 pounds at a time. Standing or sitting for an 8-hour workday may be a problem[.] I don't foresee any problem with her moving about, climbing, kneeling. Stooping and crawling may present some problems. Any job that would require her to use both hands may also be a problem.

(Administrative Record at 480.)

On November 30, 2011, at the request of Luck's attorney, Dr. M.A. Chowdhry, M.D., filled out "Mental Impairment Interrogatories" for Luck. Dr. Chowdhry diagnosed Luck with major depression, alcohol dependence, personality disorder, and history of head trauma and seizures. Dr. Chowdhry noted the following signs and symptoms for Luck: poor memory, sleep disturbance, mood disturbance, substance dependence, difficulty thinking and concentrating, social withdrawal or isolation, illogical thinking, and pathological dependence. Dr. Chowdhry opined that while Luck suffers from alcohol abuse, he believes that she "is disabled due to mental health issues and low IQ."[6] Specifically, Dr. Chowdhry stated that "[Luck] has trouble with functioning on a daily

---

[5] Administrative Record at 464.

[6] Administrative Record at 492.

basis based on low intelligence/understanding and depression."[7]  Dr. Chowdhry's prognosis for Luck was "poor." Dr. Chowdhry opined that Luck would miss three or more days of work per month due to her impairments or treatment for her impairments. Dr. Chowdhry determined that Luck lacked the ability to perform the following tasks or functions: remember locations and work-like procedures, understand and remember very short, simple instructions, understand and remember detailed instructions, carry out detailed instructions, maintain regular attendance, be punctual within customary tolerances, make simple work-related decisions, complete a normal workday, complete a normal workweek, maintain socially appropriate behavior, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others.  Dr. Chowdhry also determined that Luck had the following limitations: marked restriction of activities of daily living, extreme difficulties in maintaining social functioning, and frequent difficulties in maintaining concentration, persistence, or pace.

## V.  CONCLUSIONS OF LAW

### A.  ALJ's Disability Determination

The ALJ determined that Luck is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007).  The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the

[7] *Id.*

> impairment necessarily prevents the claimant from doing any
> other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful
> activity. If so, the claimant is not disabled. Second, the ALJ
> determines whether the claimant has a severe medical
> impairment that has lasted, or is expected to last, at least
> 12 months. Third, the ALJ considers the severity of the
> impairment, specifically whether it meets or equals one of the
> listed impairments. If the ALJ finds a severe impairment that
> meets the duration requirement, and meets or equals a listed
> impairment, then the claimant is disabled. However, the
> fourth step asks whether the claimant has the residual
> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could

perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Luck had not engaged in substantial gainful activity since December 8, 2009.[8] At the second step, the ALJ concluded from the medical evidence that Luck had the following severe impairments: alcohol dependence, major depressive disorder, and history of bipolar disorder. At the third step, the ALJ found that Luck's impairments, including her substance use disorder, meet sections 12.04 and 12.09 of 20 C.F.R. Pt. 404, Subpt. P, App. 1. However, also at step three, the ALJ determined that if Luck stopped her substance use, she would not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined that if Luck stopped her substance use, her RFC would be as follows:

---

[8] In her decision, the ALJ noted at the first step that:
> [Luck] worked after the alleged disability onset date. [Luck] testified that she has been working for the last few months about three or four hours per day, four to five days per week. She stated that she earns $9.00 per hour. However, [her] actual earnings cannot be verified. [Luck's] earnings records do not show any earnings for 2011 or 2012. [Luck] also testified that she is paid in cash. Nonetheless, this work activity did not rise to the level of substantial gainful activity. Accordingly, [Luck's] application is not denied solely based on the first step of the sequential evaluation process.

(Administrative Record at 14-15.)

[Luck] would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Luck] must avoid hazards such as heights and machinery. She would be limited to jobs involving simple routine tasks with an SVP 2 or lower.[9] [Luck] could have short superficial contact with the public, coworkers and supervisors.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined that if Luck stopped her substance use, she would be capable of performing her past relevant work as a housekeeper or cleaner. Therefore, the ALJ concluded that Luck was not disabled.

### B. Objections Raised By Claimant

Luck argues that the ALJ erred in two respects. First, Luck argues that the ALJ's finding that her substance use was a contributing factor material to the determination of disability was not based on substantial evidence. Second, Luck argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrist, Dr. Chowdhry.

### 1. Substance Use

Luck argues that the ALJ's conclusion that her alcohol abuse was a material factor contributing to her disability is not supported by substantial evidence. Specifically, Luck argues that her treating psychiatrist, Dr. Chowdhry, in "Mental Impairment Interrogatories," opined that while she has an alcohol dependence problem, he believed that she "is disabled due to mental health issues and low IQ."[10] Moreover, Luck points out that following the ALJ's decision, her attorney requested a letter from Dr. Chowdhry affirming his conclusion that she was disabled due to her mental illness. In the letter, dated June 1, 2012, Dr. Chowdhry stated that "[i]t is my belief that [Luck] is disabled due to her mental illness. She also carries a diagnosis of Substance Dependence but is disabled

---

[9] Jobs with SVP rating of 2 or lower are considered unskilled jobs.

[10] Administrative Record at 492.

and unable to work based on her mental illness."[11] Luck maintains that his letter should be considered when reviewing the ALJ's decision because it was presented to the Appeals Council in her agency-level request for review of the ALJ's decision. Luck concludes that this matter should be reversed and remanded for further consideration of whether alcohol is a material factor contributing to her disability.

In 1996, Congress amended the Social Security Act to eliminate benefits for disabilities arising from addiction to alcohol or other drugs. *See* Pub. L. No. 104-121, 110 Stat. 847; *see also Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) (discussing the 1996 Congressional amendment); *Jackson v. Apfel*, 162 F.3d 533, 537 (8th Cir. 1998) (same). The regulations implemented this law at 20 C.F.R. § 404.1535 (relating to applications for disability insurance benefits) and 20 C.F.R. § 416.935 (relating to applications for SSI benefits). The two sections are identical and provide as follows:

> How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
> > (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

---

[11] *Id.* at 539.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(I) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935.

According to the regulations, the ALJ must first determine whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1535, 416.935 ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). "The ALJ must reach this determination initially . . . using the five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." *Brueggemann*, 348 F.3d at 694 (citation omitted).

If the ALJ determines that all of a claimant's limitations, including the effects of substance use disorders, show that the claimant is disabled, then the ALJ "must next consider which limitations would remain when the effects of the substance use disorders are absent." *Id.* at 694-95 (citing *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2)). "The focus of the inquiry is on the impairments remaining

if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause." *Pettit*, 218 F.3d at 903 (citations omitted). The claimant carries the burden of proving that alcoholism or drug addiction is not a material factor to the finding of disability. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). "If the ALJ is unable to determine whether substance abuse disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow. . . . In colloquial terms, on the issue of materiality of alcoholism, a tie goes to [the claimant]." *Brueggemann*, 348 F.3d at 693 (citation omitted). Accordingly, the ALJ is required to develop a full and fair record and support his or her conclusions with substantial evidence. *Id.* at 695. In summary, "[o]nly after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may [the ALJ] then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability." *Id.*

Here, the ALJ followed the analytical framework set forth in the regulations. The ALJ first applied the five-step sequential evaluation process for determining whether an individual is disabled, and determined that Luck was disabled based on her impairments, including her substance use disorder (alcohol abuse). Next, the ALJ determined that if Luck stopped the substance use, she would continue to have a severe impairment or combination of impairments. The ALJ concluded, however, that absent the substance use, her remaining limitations were not disabling. The ALJ explained her conclusions as follows:

> [Luck's] treatment record shows [she] has major depressive disorder and a history of bipolar disorder. However, since the alleged onset date, [Luck] has abused alcohol. The evidence

demonstrates that because of [Luck's] alcohol use, she would experience significant limitations with regard to her ability to perform basic work activities. The record reflects that [Luck] has been drinking sporadically since she was 21 years old. She reported a seven-year period of sobriety until she started drinking heavily again in August 2007, which is on or about the alleged onset date.

During the course of her treatment and hospitalizations, [Luck] has been diagnosed with many mental disorders including: anxiety disorder, major depressive disorder, personality disorder, physical abuse as a child victim, sexual abuse as a child, amphetamine dependence, bipolar disorder and alcohol dependence. However, since the alleged onset date, [Luck] has frequently abused alcohol. The record clearly demonstrates that her mental impairments were exacerbated by her continued alcohol use. The record reveals that at times she used alcohol everyday and in large quantities. She has attempted numerous rehabilitation programs, but none has been able to keep her from abusing alcohol. Recent records dated August 12, 2011, show [Luck] had been binge drinking again. At that time, she reported that she was an alcoholic and could not control her drinking. At numerous times throughout the record, [Luck] was hospitalized for drinking and upon admission she would receive a low GAF score, then, upon release (after having been alcohol free while hospitalized) her GAF scores and demeanor were dramatically improved. The record clearly shows that [Luck's] underlying mental impairments are greatly exacerbated by her use of alcohol. Each of [Luck's] hospitalizations was a direct and proximate result of [her] overuse of alcohol or alcohol intoxication. Overall, [Luck] has never maintained a significant period of sobriety in which the severity of her mental impairments could be evaluated without alcohol abuse, since her alleged onset date. As a result, the undersigned cannot find her allegations of disability due to mental impairments fully credible.

Based on the aforementioned information, the undersigned finds that [Luck's] alcohol abuse in combination with her other

mental impairments would result in moderate restrictions in activities of daily living. In social functioning, [she] would have moderate difficulties. In concentration, persistence or pace, [she] would have marked limitations. As for episodes of decompensation, the record shows that [Luck] has experienced four or more episodes of decompensation primarily related to alcohol abuse.

Because [Luck's] mental impairments, including the substance use disorder, cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, the 'paragraph B' criteria are satisfied. . . .

If [Luck] stopped the substance use, the remaining limitations would not meet or medically equal the criteria of listing 12.04. . . .

The treatment records show that [Luck's] mental symptoms are significantly less problematic when she is not abusing alcohol. [Luck's] mental health providers indicate that she functions well when sober and compliant with her medications. In August 2011, Dr. Chowdhry, [Luck's] treating psychiatrist, stated that [Luck] does very well when she is not drinking. [Luck] testified that she 'absolutely' functions better when not using alcohol.

Based on this information, the undersigned finds that in the absence of alcohol, [Luck] would have mild limitations in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence or pace. As for episodes of decompensation, [Luck] would experience no episodes of decompensation if the substance use were stopped.

(Administrative Record at 15-17.)

In support of her conclusion that if Luck stopped her substance use, her limitations would not be disabling because her "mental symptoms are significantly less problematic

when she is not abusing alcohol,"[12] the ALJ refers to Exhibits 7F, 8F, and 19F in the administrative record. The Court has thoroughly reviewed each of these exhibits. Exhibit 7F is 60 pages, and offers no support for the proposition that Luck's "mental symptoms are significantly less problematic when she is not abusing alcohol."[13] In fact, Exhibit 7F does not really address the relationship between Luck's alcohol abuse and mental health symptoms. Exhibit 8F provides 6-7 months worth of short paragraph notes regarding meetings between Luck and Dr. Chowdhry for medication review.[14] In several of these notes, Luck reported to Dr. Chowdhry that her mood was "stable" and she was "functioning well." However, not one of these notes provides any opinion from Dr. Chowdhry regarding Luck's functional abilities, with or without alcohol use. Lastly, Exhibit 19F includes Dr. Chowdhry's opinion that while Luck suffers from alcohol abuse, he believes that she "is disabled due to mental health issues and low IQ."[15] Dr. Chowdhry further stated that "[Luck] has trouble with functioning on a daily basis based on low intelligence/understanding and depression."[16] The ALJ, however, ignores this evidence and focuses on a single treatment note from August 2011, where Dr. Chowdhry states that as long as Luck "is not drinking[,] she does very well."[17] The Court is unconvinced that such a statement, even though it is from a treating source, constitutes substantial evidence to support the ALJ's determination that absent alcohol use, Luck is not disabled because she would only have:

---

[12] Administrative Record at 17.

[13] *See* Administrative Record at 381-440.

[14] *Id*. at 443-447.

[15] Administrative Record at 492.

[16] *Id*.

[17] *Id*. at 501.

mild limitations in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence or pace. As for episodes of decompensation, [Luck] would experience no episodes of decompensation if the substance use were stopped.

(Administrative Record at 17.) The Court is especially unconvinced, considering that Dr. Chowdhry specifically opined that Luck had "marked restriction of activities of daily living, extreme difficulties in maintaining social functioning, and frequent difficulties in maintaining concentration, persistence, or pace" due to her mental impairments, regardless of her alcohol abuse.[18] Furthermore, in June 2012, Dr. Chowdhry affirmed his opinion and reiterated that "[i]t is my belief that [Luck] is disabled due to her mental illness. She also carries a diagnosis of Substance Dependence but is disabled and unable to work based on her mental illness."[19] Moreover, the record contains no opinion from a treating or examining doctor that absent alcohol use, Luck has only mild or moderate functional

---

[18] *Id.* at 491-496.

[19] *Id.* at 539. The Court notes that the letter from Dr. Chowdhry affirming his opinion that Luck is disabled due to her mental impairments, regardless of her alcohol abuse, was presented to the Appeals Council at the administrative level when requesting review of the ALJ's decision. Thus, the ALJ did not see Dr. Chowdhry's letter at the time she made her decision. Under such circumstances, the Eighth Circuit Court of Appeals directs the reviewing court to consider the new evidence as part of the administrative record. *See Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008) (The final decision of the Commissioner should be affirmed if the decision "is supported by substantial evidence on the record as a whole, including the new evidence that was considered by the Appeals Council."); *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992) ("The newly submitted evidence is to become part of what we will loosely describe as the 'administrative record,' even though the evidence was not originally included in the ALJ's record. . . . If, as here, the Appeals council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision."). Accordingly, the Court considers Dr. Chowdhry's letter in determining whether the ALJ's decision is based on substantial evidence.

limitations. Therefore, because the ALJ's determination with regard to whether Luck's alcohol abuse was a material factor contributing to her disability is not supported by substantial evidence, the Court concludes that remand is necessary. *See Brueggemann*, 348 F.3d at 695 (an ALJ is required to develop a full and fair record and support his or her conclusions with substantial evidence). On remand, the ALJ must fully and fairly develop the record with regard to the relationship between Luck's alcohol abuse and mental impairments when determining whether Luck's alcohol abuse is a material factor contributing to her disability.

### 2. Dr. Chowdhry's Opinions

Luck argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrist, Dr. Chowdhry. Specifically, Luck argues that the ALJ's reasons for discounting Dr. Chowdhry's opinions are not supported by substantial evidence in the record. Luck concludes that this matter should be remanded for further consideration of Dr. Chowdhry's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the

ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In her decision, the ALJ addressed the opinions of Dr. Chowdhry as follows:

> The undersigned has also read and considered the *Mental Impairment Interrogatories* submitted by [Luck's] treating

23

> psychiatrist, Dr. Chowdhry. This checklist-style form appears
> to have been completed as an accommodation to [Luck] and
> includes functional limitations caused by alcohol abuse. The
> doctor opined that [Luck] has a low IQ score but never
> performed any IQ testing. Thus, some of the doctor's
> conclusions are without evidentiary support. The doctor also
> opined [Luck] had marked restrictions in activities of daily
> living; extreme difficulties in social functioning; frequent
> deficiencies in concentration, persistence and pace and
> continual episodes of decompensation, despite the fact that he
> frequently assessed [Luck's] GAF scores in the 50's, which
> represents an individual with only moderate symptoms and
> limitations. The undersigned finds Dr. Chowdhry's
> assessment has little probative value because any objective
> evidence does not support it.

(Administrative Record at 21.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ has not fully met these requirements. First, the ALJ suggests that Dr. Chowdhry's opinions should be discounted because the interrogatories he filled out "appear[] to have been completed as an accommodation to [Luck]."[20] To the extent that the ALJ is inferring that Dr. Chowdhry expressed the opinions in the interrogatories as a favor to Luck, the Court finds such speculative reasoning does not constitute a "good" reason for disregarding Dr. Chowdhry's opinions. Next, the ALJ

---

[20] Administrative Record at 21.

24

discounts Dr. Chowdhry's opinions because Dr. Chowdhry suggested that Luck has a low IQ, but failed to perform any IQ testing. While the ALJ's statement is accurate, Dr. Chowdhry, in fact, admitted that he did not perform any IQ testing, and stated that he based his assumption that Luck has a low IQ on his interactions with her.[21] Moreover, there is evidence in the record to support Dr. Chowdhry's suggestion that Luck has a low IQ. She did not complete high school, dropping out in eleventh grade. While in school, Luck was also enrolled in special education classes. Therefore, while the ALJ correctly noted that Dr. Chowdhry did not perform an IQ test, there is evidence in the record to support Dr. Chowdhry's conclusion that Luck has a low IQ. Thus, the Court is unconvinced that Dr. Chowdhry's failure to perform IQ testing, standing alone, is a "good" reason for rejecting Dr. Chowdhry's opinions. Lastly, the ALJ contends that Luck's GAF scores, which are generally in the 50's, are indicative of only moderate symptoms, and therefore, are inconsistent with Dr. Chowdhry's opinions in the mental impairment questionnaire. The ALJ correctly points out that GAF scores ranging from 51 to 60 demonstrate moderate symptoms. *See Lacroix v. Barnhart*, 465 F.3d 881, 883 (8th Cir. 2006) (providing that GAF scores between 51 and 60 are indicative of moderate symptoms). However, in *Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009), the Eighth Circuit found that a GAF score in the 51-60 range was not "inconsistent with [an] opinion that [the claimant] was permanently disabled for any type of employment, nor does it constitute substantial evidence supporting the ALJ's conclusion she is not disabled." *Id*. Thus, the Court is unconvinced that focusing on what the Eighth Circuit deems inconclusive GAF scores in the 50's, without additional substantial evidence, constitutes a "good" reason for discounting the opinions of a long-time treating psychiatrist.

---

[21] *See* Administrative Record at 493 ("We have no formal I.Q. testing but based on interactions with [Luck], we believe she has low I.Q.").

Accordingly, the Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of Dr. Chowdhry. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in her duty to fully and fairly develop the record with regard to Dr. Chowdhry's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Chowdhry's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Chowdhry's opinions and support her reasons with evidence from the record.

Additionally, the Court is cognizant that an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 416.919a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). 20 C.F.R. § 416.919a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 416.919a(b)(1).

In this case, outside Dr. Chowdhry's opinions, there is very little objective medical evidence in the record regarding Luck's mental functional abilities or limitations. Because the evidence as a whole, both medical and non-medical, does not overwhelmingly support a finding that Luck is either disabled or not disabled, the Court believes that a consultative exam would be helpful for determining whether Luck is disabled. *See* 20 C.F.R.

§ 416.919a(b); *Barrett*, 38 F.3d at 1023. Therefore, the Court finds that the ALJ should order a new consultative examination of Luck as to her mental impairments, including an opinion on her functional abilities as they relate to her mental impairments.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to whether Luck's alcohol abuse is a material factor contributing to her disability; and (2) provide good reasons for rejecting the opinions of Dr. Chowdhry. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to whether Luck's alcohol abuse is a material factor contributing to her disability. The ALJ must also provide clear reasons for accepting or rejecting Dr. Chowdhry's opinions, and support her reasons with evidence from the record. The ALJ should also order a new consultative examination of Luck regarding her mental impairments, including her functional abilities.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this ___9ᵗʰ___ day of April, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA